

FILED
9/3/2021
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT
JH

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

UNITED STATES OF AMERICA,      )
     )
     Plaintiff,      )
     )
     v.      )      No. 18 CR 122
     )      Judge Andrea R. Wood
     )
CAROL J. DELGADO and,      )
BRENT D. HOUCK      )
     )
     Defendants.      )

### MEMORANDUM IN SUPPORT OF DEFENDANT CAROL DELGADO'S
### MOTION TO DISMISS INDICTMENT
### AND REQUEST FOR JUDICIAL NOTICE

Carol J. Delgado
Pro Se
209 N. Ft. Lauderdale Beach Blvd. #2A
Ft. Lauderdale, FL 33304
Cjdelgado3@gmail.com
(815) 228-5254

# TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT ........................................................................ 1

II.     THE INDICTMENT ....................................................................................... 1

III.    REQUEST FOR JUDICIAL NOTICE ........................................................... 3

    A.   Request For Judicial Notice of Certain Adjudicative Facts .......................... 3

    B.   Judicial Notice – Legal Standard ................................................................ 5

    C.   Judicial Notice – Argument ........................................................................ 6

IV.    MOTION TO DISMISS - LEGAL STANDARD ........................................... 8

V.     ARGUMENT ................................................................................................ 10

    A.   The Indictment Allegations Fail to State a Violation of the Bank Fraud Statute ...................... 10

       1.   No Scheme or Intent to Defraud a Financial Institution ........................ 11

       2.   The Indictment Does Not Allege Material Misrepresentation ................ 14

       3.   Alleged Executions of the Scheme Are Not Misrepresentations ............ 19

       4.   The Counts ............................................................................................ 21

VI.    CONCLUSION ............................................................................................ 23

## TABLE OF AUTHORITIES

**Cases**

Bucci v. Wacovia Bank, N.A., 2009 WL 1740503, *3 (E.D. Pa.)................................................. 19

Davis v. HSBC Bank Nevada, N.A., 691 F.3d 1152, 1160 (9th Cir. 2012)................................... 8

Drummond Co. v. St. Louis Coke& Foundry Supply Co., 181 S.W.3d 99, 103 (Mo. Ct. App. 2005) ...... 19

Hamling v. United States, 418 U.S. 87, 117-18 (1974) ............................................................. 11

Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005) ............................................................. 8

Kramer v. Time Warner, Inc., 937 F.2d 767, 773 (2d Cir. 1991) ............................................... 8

Loughrin v. United States, 573 U.S. 351 (2014)...................................................................... 13

Parrino v. FHP, Inc., 146 F.3d 699, 705-06 (9th Cir. 1998) ..................................................... 8

Russell v. United States, 369 U.S. 749, 765 (1962).................................................................. 11

Schlifke v. Seafirst Corp., 866 F.2d 935, 945 (7th Cir. 1989) ................................................... 19

Shaw v. United States, 137 S. Ct. 462, 469 (2016).................................................................. 13

Shrem v. Sw. Airlines Co., No. 15-cv-04567-HSG, 2016 WL 4170462 ....................................... 8

Stricker v. Union Planters Bank, N.A., 436 F.3d 875, 878-79 (8th Cir. 2006 ............................. 19

Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)...................................... 8

U.S. v. Dowling, 739 F.2d 1445, 1450 (9th Cir. 1984), rev'd. as to other counts, 437 U.S. 207 (1985) ... 19

U.S. v. Jones, 542 F.2d at 664 (6th Cir. 1976)....................................................................... 7

U.S. v. Steffan 687 F.3d 1104 (8th Cir. 2012)....................................................................... 19

United States ex rel. O'Donnell v. Countrywide Home Loans, Inc., Nos. 15-496, 15-499, 2016 WL
      2956743 (2d Cir. May 23, 2016)................................................................................. 18

United States v. Banyan, 933 F.3d 548 (6th Cir. 2019)............................................................ 14

United States v. Bouchard, 828 F.3d 116, 125 (2d Cir. 2016)................................................... 13

United States v. Coscia, 866 F.3d at 799 ............................................................................. 12

United States v. Curtis, 506 F.2d 985, 992 (10th Cir. 1974) .................................................... 17

United States v. Dial, 757 F.2d 163, 168 (7th Cir.1985) ......................................................... 12

United States v. Doherty, 969 F.2d 425, 429 (7th Cir. 1992) ................................................... 12

United States v. Du Bo, 186 F.3d 1177, 1179 (9th Cir.1999).................................................... 16

United States v. Flores, 404 F.3d 320, 325-26 (5th Cir. 2005) ................................................. 10

United States v. Gimbel, 830 F.2d 621, 624 (7th Cir. 1987) .................................................... 10

United States v. Higgins, 270 F.3d 1070, 1073 (7th Cir. 2001)................................................. 13

United States v. Kevin Lebeau and Brian Bodie, 18-1656 (7th Cir. 2020) ................................. 15

United States v. LeDonne, 21 F.3d 1418, 1428 (7th Cir. 1994) .................................................. 13

United States v. Neder, 527 U.S. 1 (1999) ................................................................................... 15

United States v. O'Brien, No. 17 CR 239-1, 2018 WL 4205472, at *11 (N.D. Ill. Sept. 4, 2018) ............ 13

United States v. Omer, 395 F.3d 1087 (9th Cir. 2005) ................................................................. 15

United States v. Reynolds, 189 F.3d 521, 525 n.2 (7th Cir. 1999) ............................................... 15

United States v. Risk, 843 F.2d 1059, 1061 (7th Cir. 1988) ......................................................... 10

United States v. Smith, 230 F.3d 300, 305 (7th Cir. 2000) ........................................................... 12

United States v. Stavroulakis, 952 F.2d 686, 693 (2d Cir. 1992) ................................................ 11

United States v. Stavroulakis, 952 F.2d 686, 694 (2d Cir. 1992). ................................................ 17

United States v. Tomkins, No. 07-cr-227, 2009 WL 590237, at *2 (N.D. Ill. Mar. 6, 2009) .................... 10

United States v. Weimert, 819 F.3d 351, 355 (7th Cir. 2016) ....................................................... 12

United States v. Yefsky , 994 F.2d 885, 893 (1st Cir. 1993) ......................................................... 17

Waye v. Commonwealth Bank, 846 F. Supp. 321, 326 (M.D. Pa. 1994) ........................................ 19

White v. H&R Block, Inc., 2004 WL 1698628 .............................................................................. 7

Williams v. United States, 458 U.S. 279, 102 S. Ct. 3088, 73 L.Ed.2d 767 (1982) ..................... 20

## Other Authorities

18 U.S.C. § 20 ............................................................................................................................. 12

8 Moore, Federal Practice 12.01(3) at 12-8 (2d ed. 1976) ........................................................... 7

Fed. R. Crim. P. 12(b)(2) and (3), and 7(c) ................................................................................... 3

Fed. R. Evid. 201 .......................................................................................................................... 7

Model Criminal Jury Instructions for the Seventh Circuit, p. 560 (2020). ................................... 12

Fed. Rule Civil P. 12(b)(6) ............................................................................................................ 8

Defendant Carol J. Delgado, Pro Se, pursuant to Fed. R. Crim. P. 12(b)(2) and (3), and 7(c), respectfully submits this memorandum of law in support of her motion to dismiss the Indictment ("Indictment"). (ECF No. 16.)

## I.     PRELIMINARY STATEMENT

On June 13, 2018, a grand jury returned an indictment ("Indictment"*see* Dkt. #16) charging Ms. Delgado and Mr. Houck both with five counts alleging bank fraud in violation of 18 U.S.C. § 1344(1).

Ms. Delgado moves to dismiss the indictment as insufficient in that it fails to fairly inform her of the charges against which she must defend and otherwise fails to state an offense. Additionally, Ms. Delgado requests judicial notice of certain adjudicative facts.

The indictment perpetuates the prejudicial misrepresentations that permeated the search warrant affidavits and the criminal complaint and continues the Government's false narrative regarding a contractual agreement between The PrivateBank and Trust Company ("PrivateBank" or "PrivateBank/CIBC" or the "Bank") and the entity the indictment refers to as FMSI and fails to quantify the purported scheme, execution, intent, and materiality with sufficient particularity.

## II.     THE INDICTMENT

FMSI is defined in the indictment as Financial Management Services, Inc**.**, (*id.* ¶ 1(a)) and is alleged to have entered into a loan agreement with PrivateBank; (*id.* ¶ 1(f)) and that the FMSI business was to make loans to their customer construction companies; (*id.* ¶ 1(f)) that FMSI provided PrivateBank with security interests in, and liens on, all or substantially all loans made by FMSI; (*id.* ¶ 1(h)) that borrowing base certificates ("BBCs") specified the construction company loans made by FMSI that could be used as collateral and included information that gave PrivateBank an idea of the value of each construction company loan; (*id.* ¶ 1(h)) and that

FMSI submitted compliance certificates ("CCs") certifying that it was complying in all material respects with all of the terms and conditions contained in the FMSI loan agreement; (*id.* ¶ 1(i)) and that the FMSI Loan Agreement contained a paragraph relating to transactions with affiliates whereby FMSI was not permitted directly or indirectly to enter into, or permit to exist, any transaction with any of its Affiliates or with any director, officer or employee of FMSI, other than transactions in the ordinary course of FMSI's business and that such affiliated loans be fully disclosed to the PrivateBank and be no less favorable than would be obtained in a comparable arm's length transaction and that affiliate was defined by the FMSI Loan Agreement as any other person who (directly or indirectly) controlled, was controlled by, or was under common control with such person and that affiliate also meant any officer or director of such a person. (*id.* ¶ 1(j)) The Indictment contains similar allegations regarding RAMCO, defined in the first count as Renewable Asset Management Company, LLC. (*id.* ¶ 1(a - j)).

The Indictment alleges that the purported scheme to defraud PrivateBank/CIBC was perpetrated by Ms. Delgado and Mr. Houck (i) falsely representing and causing to be falsely represented to PrivateBank that [loan] funds were to be used for the operations of FMSI and RAMCO; (*id.* ¶ 3) and (ii) created and caused to be created "fake construction companies;" and "false documentation meant to show those companies were real;" (*id.* ¶ 4) and (iii) created and caused to be created "fraudulent funding requests that were submitted to the PrivateBank purportedly for the fake companies;" (*id.* ¶ 4) and (iv) "represented to the PrivateBank were construction companies seeking loans from FMSI;" (*id.* ¶ 5) and (v) created "fake credit applications" and "submitted to FMSI and RAMCO;" (*id.* ¶ 6) and that (vi) Ms. Delgado "created and caused to be created borrowing base certificates and compliance certificates that were submitted to the PrivateBank containing fictitious information about the loans made by

FMSI and RAMCO as well as the value of FMSI's and RAMCO's businesses" and "regularly certified on the compliance certificates that FMSI and RAMCO complied with the terms of the FMSI and RAMCO Loan Agreements," and "Delgado knew that the information contained in the compliance certificates did not accurately reflect the value of FMSI or RAMCO because the certificates represented, in part, fake information about the fake companies;" (*id.* ¶ 7) and that (vii) Ms. Delgado and Mr. Houck purportedly "misrepresented, concealed, and hid, and caused to be misrepresented, concealed and hidden, acts done in furtherance of the scheme and the purposes of those acts." *Id.* ¶ 9.

The indictment alleges that "between in or around January 2014 and in or around August 2016," Ms. Delgado and Mr. Houck "knowingly submitted and caused to be submitted to the PrivateBank a total of over $4 million in false and fraudulent requests for loan funds from the PrivateBank pursuant to the FMSI Loan Agreement," and that "none of those funds were used by FMSI or RAMCO to finance loans as required per the FMSI and RAMCO Loan Agreements;" and that a portion of the funds were used for their own personal benefit and that a portion of the funds were used to repay loans [to FMSI]; *Id.* ¶ 8.

Specifically, the Indictment alleges in the five counts that the Ms. Delgado and Mr. Houck executed the purported "scheme to defraud by causing PrivateBank to transfer" $37,430 (Count One), $108,350 (Count Two), $479,000 (Count Three), $32,000 (Count Four) and $113,585.44 (Count Five) "by wire transfer" to various third-party bank accounts on May 12, 2015, May 15, 2015, August 6, 2015, January 14, 2016, and June 30, 2016, respectively, in violation of Title 18, United States Code, Section 1344(1).  *Id.* ¶10.

## III.    REQUEST FOR JUDICIAL NOTICE

### A.    Request For Judicial Notice of Certain Adjudicative Facts

The Indictment presents the purported scheme to defraud PrivateBank as a criminal breach of contract and intentionally misrepresents the parties to the contractual agreement as well the terms. The grand jury transcripts show that the grand jurors were provided numerous false statements that were presented as fact by both Agent Hagstrom and AUSA Tzur and the indictment language perpetuates those falsehoods such that it cannot be used as the charging document as drafted. These misrepresentations are not inconsequential details able to be argued at trial, but prejudicial falsehoods regarding a written contract and the parties to that contract that materially shape the interpretation of the indictment and cause substantial prejudice to the defendants.

Ms. Delgado requests that this Court take judicial notice of the Business Loan and Security Agreement by and between the PrivateBank and Trust Company and FMSI of Delaware, Inc., Three Marketiers, LLC, FMSI-Financial Resources, LLC, and FMSI-Consumer Credit Corporation, each individually a "Co-Borrower" and collectively as the "Co-Borrowers," or "FMSI of Delaware Borrowers" and referred to or otherwise incorporated into the allegations in the Indictment as the "FMSI Loan Agreement;" as well as the FMSI of Delaware Loan History and Breach of Contract Judgment against the FMSI of Delaware Borrowers recorded on September 27, 2017 ("Judgment Order")[1] and the Gozdecki Testimony Excerpt,[2] whereby David Gozdecki, managing Director of Loan Administration/Special Assets for PrivateBank/CIBC confirmed in sworn testimony that Financial Management Services, Inc. was **not** a party to the FMSI Loan Agreement and that the Bank **did not** have a security agreement with Financial

---

[1] The amount of the Breach of Contract Judgment was based upon the Gozdecki Affidavit including the FMSI of Delaware Loan History in the Circuit Court of Cook County, Illinois Chancery Division, Case No. 2016CH11769.

[2] Circuit Court of Cook County, Illinois Chancery Division, Case No. 2016CH11769 Transcript 04/05/2019 p360-362 *See* Gozdecki Transcript Excerpt.

Management Services, Inc.  These documents are attached as Exhibit 1 - 4 to the Declaration of

Carol J. Delgado in Support of Defendant's Motion To Dismiss the Indictment.  Given the

centrality to the Indictment's allegations and the fact that the exhibit's authenticity is not subject

to reasonable dispute, judicial notice is proper under applicable law.

### B.      Judicial Notice – Legal Standard

Motions to dismiss indictments are governed by Rule 12 of the Federal Rules of Criminal

Procedure which states that "[a]ny defense, objection, or request which is capable of

determination without the trial of the general issue may be raised before trial by motion." Fed. R.

Crim. P. 12(b).  "Rule 12 vests the court with authority 'to determine issues of fact in such

manner as the court deems appropriate.'" *Id.* (quoting Notes of the Advisory Committee to Fed.

R. Crim. P. 12, reprinted in 8 Moore, Federal Practice 12.01(3) at 12-8 (2d ed. 1976)).  The

Federal Rules of Criminal Procedure "clearly envision that a district court may make preliminary

findings of fact necessary to decide the questions of law presented by pre-trial motion so long as

the court's findings on the motion do not invade the province of the ultimate finder of fact." *U.S.

v. Jones,* 542 F.2d at 664 (6th Cir. 1976).  A defense raised in a motion to dismiss an indictment

is "capable of determination if trial of the facts surrounding the commission of the alleged

offense would be of no assistance in determining the validity of the defense." *Id.* (citing *United

States v. Covington,* 395 U.S. 57, 60 (1969)).

Federal courts may grant judicial notice of facts that "can be accurately and readily

determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid.

201(b)(2).  The scope of Rule 201 "governs judicial notice of an adjudicative fact only," (Fed. R.

Evid. 201(a)) and the Advisory Committee's Notes to Rule 201(a) defines adjudicative facts as

5

those "which relate to the parties," and "they relate to the parties, their activities, their properties, their businesses."

## C.    Judicial Notice – Argument

On a motion to dismiss, this Court may consider a document outside the four corners of the indictment where the document "constitute[s] 'matters of which judicial notice may be taken under Fed. R. Evid. 201.'" *White v. H&R Block, Inc.,* 2004 WL 1698628, at *2 (quoting *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)).  The contents of the Business Loan and Security Agreement by and between the PrivateBank and Trust Company and the FMSI of Delaware Borrowers is quoted, paraphrased, referred to or otherwise incorporated into the allegations in the Indictment in almost every paragraph.

A court "may take into account documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading"' and may "treat such a document as part of the complaint, and thus . . . assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." Davis v. HSBC Bank Nevada, N.A., 691 F.3d 1152, 1160 (9th Cir. 2012) (alteration in original; quotation marks omitted); see also, e.g., Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Fed Rule Civ P. 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.").  The incorporation-by-reference doctrine encompasses situations in which the claim or allegation depends on the contents of a document, even if the complaint does not expressly attach the document. Shrem v. Sw. Airlines Co., No. 15-cv-04567-HSG, 2016 WL 4170462, at *1 (N.D. Cal. Aug 8, 2016) (stating that court may consider documents where "plaintiff's claim

depends on the contents of a document . . . and the parties do not dispute the authenticity of the document,") (quoting Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005)).  The Ninth Circuit has explained "the policy concern underlying the rule" as "[p]reventing plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are based." Parrino v. FHP, Inc., 146 F.3d 699, 705-06 (9th Cir. 1998).  While civil in nature, the policy concern expressed by the Ninth Circuit is certainly still relevant to the case at hand as the Government has purposely misstated references to documents upon which the indictment is based.

The FMSI Loan Agreement, FMSI of Delaware Loan History, Judgment Order and Gozdecki Testimony Excerpt are properly subject to judicial notice for several reasons.  First, the Indictment expressly identifies the FMSI Loan Agreement as the source of the transactional relationship and emphatically identifies Financial Management Services, Inc. as FMSI, (*id.* ¶ 1(a)) the entity with whom "PrivateBank entered into a business loan and security agreement." (*Id.* ¶ 1(f)).  The Indictment makes numerous references to purported terms of the FMSI Loan Agreement, including lending restrictions to construction companies, collateral requirements, security interests and lien rights, borrowing base certificates, valuations, compliance certificates and affiliated transactions (*id.* ¶¶ 1-10) and alleges in each of the five counts that Ms. Delgado and Mr. Houck submitted "false and fraudulent requests for loan funds from the PrivateBank pursuant to the FMSI Loan Agreement." (*Id.* ¶¶ 8-10).

Further, the counts in the Indictment charge bank fraud in violation of Title 18, United States Code, Section 1344(1), necessitating among other things, proof of a scheme, material misrepresentation and intent to defraud a federally insured financial institution, making the contractual relationship "pursuant to the FMSI Loan Agreement" (*id.* ¶ 8) a key component to

the determination of whether the indictment is sufficient. Additionally, the Indictment states that "CIBC Bank USA retained all of the assets, liabilities, and business relationships the PrivateBank entered with Carol J. Delgado, FMSI and its affiliated entities and RAMCO," but does not identify the contractual or legal standard to prove this statement nor does it provide specific proof regarding deposit insurance for the time period covering the specific counts.

The authenticity of the FMSI Loan Agreement is not disputed and in fact, the origins of the attached exhibit is from the discovery provided by the Government via the PrivateBank/CIBC. In the same vein, the FMSI of Delaware Loan History and the Breach of Contract Judgment Order is a matter of public record as well as a part of the discovery provided by the Government and reaffirms the Co-Borrowers to the FMSI Loan Agreement. The Gozdecki Transcript Excerpt is sworn testimony provided by a representative for PrivateBank/CIBC for the limited purpose of confirming that Financial Management Services, Inc. was not a party to the FMSI Loan Agreement and that PrivateBank/CIBC did not have a security agreement with Financial Management Services, Inc. All of the documents are a part of the appellate record for the civil breach of contract case against the FMSI of Delaware Borrowers and Carol Delgado as guarantor. The authenticity of these documents should not be in dispute as they originated with PrivateBank/CIBC and as such the Court may take judicial notice of them.

## IV. MOTION TO DISMISS - LEGAL STANDARD

Rule 12(b) of the Federal Rules of Criminal Procedure permits pre-trial motions on "any defense, objection, or request that the court can determine without a trial of the general issue." An indictment must be dismissed if it fails to state an offense. Fed. R. Crim. P. 12(b)(3)(B)(v); *see also United States v.* Tomkins, No. 07-cr-227, 2009 WL 590237, at *2 (N.D. Ill. Mar. 6, 2009)

("An indictment must allege facts which, if proven, constitute the crime charged." (citing *United States v. Gimbel*, 830 F.2d 621, 624 (7th Cir. 1987)). Conclusory allegations of the essential elements of the charged offense cannot save an indictment from dismissal under Rule 12. Rather, an indictment must be dismissed if the undisputed facts "[do] not conform to the allegations in the indictment" and preclude the government from "fulfill[ing] the elements" of the charged offense. *United States v. Risk*, 843 F.2d 1059, 1061 (7th Cir. 1988) (upholding the dismissal of the indictment because, although the indictment's conclusory allegations "fulfill[ed] the elements of a [structuring] violation . . . the government's own facts proffered to the defendant and the district court" precluded the government from proving that offense); *see also United States v. Flores,* 404 F.3d 320, 325-26 (5th Cir. 2005) (holding that a court may dismiss an indictment "based on the resolution of a legal question in the presence of undisputed facts").

To be sufficient, an indictment must charge a crime with enough precision to fairly inform the defendant of the charges he must meet and with enough detail that he may plead double jeopardy in a future prosecution based on the same set of events. To the extent an offense "includes generic terms, it is not sufficient that the indictment shall charge the offense in the same generic terms as the definition." *United States v. Stavroulakis,* 952 F.2d 686, 693 (2d Cir. 1992). Rather, "it must state the [specifics]" and "descend to particulars." (quoting *Russell v. United States*, 369 U.S. 749, 765 (1962)). Such factual particulars are required so that the Court may evaluate whether the facts, if proven, constitute an offense.

> "It is an elementary principle of criminal pleading, that where the definition of an offence, whether it be at common law or by statute, 'includes generic terms, it is not sufficient that the indictment shall charge the offence in the same generic terms as in the definition; but it must state the species - it must descend to particulars." ... An indictment not framed to apprise the defendant "with reasonable certainty, of the nature of the accusation against him... is defective, although it may follow the language of the statute."

*Russell v. United States,* 369 U.S. 749, 765 (1962)(internal citations omitted).

"Undoubtedly, the language of the statute may be used in the general description of an offence, but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged." *Hamling v. United States,* 418 U.S. 87, 117-18 (1974)(internal citations omitted).

## V.    ARGUMENT

Ms. Delgado and Mr. Houck are charged in a five-count indictment with bank fraud in violation of 18 U.S.C. §§1344(1).   The indictment is facially and legally insufficient in that it fails to fairly inform the defendants of the charges they must defend against and otherwise fails to state an offense. Accordingly, the indictment should be dismissed.

### A.  The Indictment Allegations Fail to State a Violation of the Bank Fraud Statute

The bank fraud statute, 18 U.S.C. §1344(1) provides that whoever knowingly executes, or attempts to execute,  a  scheme  or artifice to defraud a financial institution may be found guilty of bank fraud.  A bank fraud conviction requires the government prove (1) there was a scheme to defraud[3] a financial institution; (2) the defendant knowingly executed or attempted to execute the scheme; (3) the defendant acted with the intent to defraud the financial institution; (4) the scheme involved a materially false or fraudulent pretense, representation, or promise; and (5) at the time of the charged offense the deposits of the financial institution were insured by the Federal Deposit Insurance Corporation.  *See Model Criminal Jury Instructions for the Seventh Circuit,* p. 560 (2020).

---

[3] A scheme to defraud a [bank; financial institution] is a plan or course of action that is intended to deceive or cheat that [bank; financial institution] or [to obtain money or property or to cause the [potential] loss of money or property [belonging to; in the [care] [custody] [or] [control] of] the [bank; financial institution]. [A scheme to defraud need not involve any specific false statement or misrepresentation of fact.] *See Model Criminal Jury Instructions for the Seventh Circuit*, p. 560 (2020).

To state offenses for bank fraud under 18 U.S.C. §1344(1), the Indictment must allege, among other things, that Defendants knowingly devised a "scheme or artifice to defraud." *See United States v. Coscia*, 866 F.3d at 799; *United States v. Weimert*, 819 F.3d 351, 355 (7th Cir. 2016); *United States v. Dial*, 757 F.2d 163, 168 (7th Cir.1985); *see also United States v. Doherty*, 969 F.2d 425, 429 (7th Cir. 1992)

The Indictment must also allege that Defendants knowingly devised or participated in such a scheme or artifice with the specific "intent to defraud," which means acting knowingly and with the specific intent to deceive for the purpose of financial gain or to cause financial loss to another. Weimert, 819 F.3d at 355 (citation omitted).

### 1.     No Scheme or Intent to Defraud a Financial Institution

The Indictment when read as a whole, does not and cannot allege the core element of bank fraud: specific intent to defraud a financial institution (as defined in 18 U.S.C. § 20). *See United States v. Smith*, 230 F.3d 300, 305 (7th Cir. 2000) ("Indictments are reviewed on a practical basis and in their entirety, rather than in a hypertechnical manner.") (citation omitted). As the Supreme Court stated in *Loughrin v. United States*, 573 U.S. 351 (2014), in order to establish a violation the government must prove "that a defendant intended to 'defraud a financial institution'; indeed, that is § 1344(1)'s whole sum and substance." *Id.* at 357 (citation omitted); *accord Shaw v. United States*, 137 S. Ct. 462, 469 (2016) (to fall within the statute, a "scheme must be one to deceive the bank and deprive it of something of value"); *United States v. Higgins*, 270 F.3d 1070, 1073 (7th Cir. 2001) ("In order to support a conviction under § 1344(1), the government must prove that the defendant engaged in a 'pattern or course of conduct designed to deceive a financial institution'") (quoting *United States v. LeDonne*, 21 F.3d 1418, 1428 (7th Cir. 1994)); *United States v. O'Brien*, No. 17 CR 239-1, 2018 WL 4205472, at *11

(N.D. Ill. Sept. 4, 2018) (Durkin, J.) ("As the Supreme Court held in *Loughrin v. United States*, 134 S. Ct. 2384 (2014), proof of specific intent to defraud a financial institution is required under § 1344(1)."). By contrast, "a defendant cannot be convicted of violating § 1344(1) merely because he intends to defraud an entity that is not in fact covered by the statute." *United States v. Bouchard*, 828 F.3d 116, 125 (2d Cir. 2016).

The bank fraud statute is an exceptionally powerful tool for the government. The Supreme Court has warned of the potential for abuse if the bank fraud statute is applied in an overbroad manner that is not closely tethered to the statutory language, cautioning that Section 1344 should not be construed "as a plenary ban on fraud." *Loughrin*, 573 U.S. at 362.

The Second Circuit's reasoning in *Bouchard* is instructive. There, the court reversed a conviction arising from the government's application of the bank fraud statute in an overbroad manner. The defendant was charged with bank fraud based on false documents that he submitted to obtain mortgage loans from a lender called BNC Mortgage ("BNC"). At the time of the offense, mortgage lenders such as BNC were not included within the statutory definition of "financial institution" because they were not federally insured. *Bouchard*, 828 F.2d at 120, 123. After the defendant was found guilty by a jury, he moved for a new trial on the ground that he could not be liable for bank fraud because BNC was not a "financial institution" within the meaning of Section 1344, and therefore that he did not direct his fraudulent scheme at a bank, as required by the statute. The trial court rejected this argument, citing the fact that BNC's parent company, Lehman Brothers, was federally insured and had provided funds for the mortgage loans as part of an "integrated transaction." *Id*. at 123 (citation omitted).

On appeal, the Second Circuit reversed. As the court explained, "§ 1344(1) requires the Government to show that a defendant intended to defraud the financial institution *itself*" and "a

defendant cannot be convicted of violating § 1344(1) merely because he intends to defraud an entity, like BNC, that is not in fact covered by the statute." *Id.* at 125. The court emphasized the need to construe the statute with rigor: "a 'financial institution' is not a loose or colloquial term, but a term of precise definition that can lead to grave criminal consequences." *Id.* at 126 (citation omitted). Strict construction is necessary, the court explained, because the bank fraud statute is not intended to "'federaliz[e] frauds that are only tangentially related to the banking system,' which is § 1344's core concern." *Id.* (quoting *Loughrin*, 573 U.S. at 362).

The Sixth Circuit reached the same result in the recent case of *United States v. Banyan*, 933 F.3d 548 (6th Cir. 2019), which, like *Bouchard*, was a bank fraud prosecution based on the submission of fraudulent loan applications to a non-federally insured mortgage company. As the *Banyan* court noted, bank fraud "has a longer limitations period" than other federal fraud statutes, but it "brings the complication that the fraud must be perpetrated against a bank." *Id.* At 551. With respect to Section 1344(1), the government was required "to prove that a defendant specifically 'intend[ed] to defraud a financial institution.'" *Id.* at 555 (quoting *Loughrin* at 357) (internal quotation marks omitted). Because the government failed to "present proof of any such specific intent," the court threw out the conviction. *Id.*

Although the factual predicate in the instant case is different from *Bouchard* and *Banyan*, their animating principle exposes the Indictment's flaw. The indictment contains no indication of intent to defraud a federally insured financial institution. As such, the indictment fails to contain the indispensable element that either Ms. Delgado or Mr. Houck specifically intended to defraud a financial institution. Given the absence of a coherent theory of wrongdoing that would be sufficient to satisfy the statutory elements, the indictment must be dismissed.

## 2.     The Indictment Does Not Allege Material Misrepresentation

In *United States v. Kevin Lebeau and Brian Bodie,* 18-1656 (7th Cir. 2020), Lebeau challenged jury instructions for the bank fraud counts post-conviction, noting that the instructions did not ask the jury to decide whether "the scheme involved a materially false or fraudulent pretense, representation, or promise." See Pattern Instr. at 447.  LeBeau asserts that this omission impermissibly relieved the government of part of its evidentiary burden and prejudiced him.  The court acknowledged as much, stating:

> LeBeau's point is a serious one, supported by Supreme Court precedent and some of our decisions. In *United States v. Neder*, 527 U.S. 1 (1999), the Supreme Court held that "materiality of falsehood is an element of the federal … bank fraud statute[]." *Id.* at 25. It did not limit that holding to section 1344(2). Rather, it determined that "fraud" itself requires the element of materiality. *Id.* at 23. We have since said that *Neder* requires "district courts [to] include materiality in the jury instructions for section 1344." *United States v. Reynolds*, 189 F.3d 521, 525 n.2 (7th Cir. 1999). The Committee Comment to the Pattern Instruction for section 1344 is even more explicit:
>
>> Although the Seventh Circuit has not yet addressed the application of *Neder* to § 1344(1) specifically, the Ninth Circuit, in *United States v. Omer*, 395 F.3d 1087 (9th Cir. 2005), held that materiality is an element of a § 1344(1) violation under *Neder*. In light of the general admonitions in *Neder* and *Reynolds*, this instruction has been modified to reflect this requirement.
>
> Pattern Instr. at 448.

While recognizing past inconsistency, the court stated that:
> "The better course, consistent with *Neder*, is to require the materiality instruction on all bank-fraud charges, whether  brought under section 1344(1) or (2). The government has informed us that this is its current practice, and we encourage that practice to continue until such time as we receive greater clarity from the Supreme Court about what is required."

In *United States v. Timothy W. Omer,* (9th Cir. 2005)  Timothy Omer appealed from his jury trial conviction and sentence for bank fraud in violation of 18 U.S.C. § 1344(1). Omer contended that the district court erroneously denied his pretrial motion to dismiss in which he argued that the indictment was fatally deficient because the indictment failed to allege materiality of the fraud.  The court agreed, stating "[I]f properly challenged prior to trial, an

indictment's complete failure to recite an essential element of the charged offense is not a minor or technical flaw subject to harmless error analysis, but a fatal flaw requiring dismissal of the indictment." United States v. Du Bo, 186 F.3d 1177, 1179 (9th Cir.1999). Omer's indictment fails to recite an essential element of the charged offense-materiality of falsehood. Therefore, because Omer properly challenged the sufficiency of the indictment prior to trial, the district court should have dismissed the indictment."

### a.  Purported False Statements Lack Specificity

The indictment alleges that Ms. Delgado and Mr. Houck falsely represented to PrivateBank that [loan] funds were to be used for the operations of FMSI and RAMCO (*id.* ¶¶ 3-4) but provide no specific misrepresentation other than a generic accusation, nor indicates how or when this occurred or whether this was material.  The indictment alleges purported "fictitious" companies and claims that Ms. Delgado and Mr. Houck "represented to the PrivateBank [that] they were construction companies seeking loans from FMSI," yet provides no specific representation to indicate how or when this occurred or whether this was material.  (*id.* ¶ 5)  The indictment states that these entities were seeking loans from Financial Management Services, Inc., and alleges in ¶ 6 that documents were submitted to FMSI and RAMCO.  Financial Management Services, Inc. is not a federally insured financial institution, nor is RAMCO. Neither of these allegations reflect a material misrepresentation to a bank or any kind of representation to a bank at all.

None of the allegations contained in ¶¶ 2 – 6 of the indictment provide any indication regarding what purportedly false representations were made to a federally insured bank, nor when these representations occurred and in what context that PrivateBank would rely upon, nor any indication of materiality or even who in particular made the misrepresentation.

In particular, the indictment fails to provide any particulars regarding Mr. Houck's involvement in a scheme to defraud PrivateBank/CIBC. Mr. Houck had no relationship with PrivateBank/CIBC, he was not a signer on either of the loan agreements, he was not a point of contact for PrivateBank/CIBC, he was not a signer on any of the bank accounts with PrivateBank/CIBC, he had no access to the treasury management system, no access to any of the in-house loan technology programs and no incentive commit any fraudulent acts as he had considerable personal funds invested in the companies. The indictment includes generalized allegations that track the bank fraud statute for misrepresentations but do not provide any specifics indicating when or how this occurred.

### b. Breach of Contract Does Not Amount to Fraud

Congress modeled the bank fraud statute upon the mail and wire fraud statutes. Thus courts have looked to mail and wire fraud precedents in interpreting the requirements for violation of the bank fraud statute. *United States v. Stavroulakis*, 952 F.2d 686, 694 (2d Cir. 1992). A mail fraud indictment must divulge the factual basis for the allegation that a scheme was executed through false representations. *United States v. Yefsky* , 994 F.2d 885, 893 (1st Cir. 1993) (quoting Russell, supra, and opining that "a mail fraud conspiracy depends so crucially on the underlying fraud that the fraud also must be specified in the applicable count"); *United States v. Curtis*, 506 F.2d 985, 992 (10th Cir. 1974) (dismissing indictment on grounds that pleading the statutory language in mail fraud indictment without "any fair indication of the nature or character of the scheme or artifice relied upon, or the false pretenses... forming a part of it" was insufficient); *United States v. Nance*, 533 F.2d 699, 702 (D.C. Cir. 1976) (following Curtis).

In 2016, the U.S. Court of Appeals for the Second Circuit determined that a breach of contract can be fraudulent under federal law only if the defendant had fraudulent intent at the

time the purportedly fraudulent statements were made.  *See United States ex rel. O'Donnell v. Countrywide Home Loans, Inc.*, Nos. 15-496, 15-499, 2016 WL 2956743 (2d Cir. May 23, 2016). The government claimed that Countrywide made affirmative misrepresentations regarding the quality of loans it was selling to two government-sponsored entities (GSEs), Fannie Mae and Freddie Mac.  Countrywide entered into purchase agreements representing a promise of future performance, namely, that it would sell the GSEs quality loans.  The Second Circuit held that when allegedly fraudulent misrepresentations are promises in a contract, fraud requires a showing of fraudulent intent at the time of entering into the contract and that fraudulent intent requires a showing that a contracting party had no intention of fulfilling its contractual obligations at the time of execution.  Without fraudulent intent at the time of execution, a willful breach of contract cannot satisfy the contemporaneity principle and therefore amounts only to a breach of contract.

"In order for a fraudulent disclosure to be actionable fraud (either criminal or civil) the duty to disclose must be independent of any duty imposed by the contract. The case law is clear, that the disclosure duty must be imposed by statute or by the existence of a fiduciary relationship:  In conclusion, we stress the narrowness of our holding permits nondisclosures to form the basis of a scheme to defraud only when there exists an independent duty (either fiduciary or derived from an explicit and independent statutory requirement) and such a duty has been breached. To hold otherwise that illegal conduct alone may constitute the basis of the fraud element of a mail fraud conviction would have the potential of bringing almost any illegal act within the province of the mail fraud statute.  *U.S. v. Dowling*, 739 F.2d 1445, 1450 (9th Cir. 1984), *rev'd. as to other counts,* 437 U.S. 207 (1985)." *U.S. v. Steffan* 687 F.3d 1104 (8th Cir. 2012)

There is no fiduciary relationship between a corporate borrower and a lender. *See Drummond Co. v. St. Louis Coke& Foundry Supply Co.*, 181 S.W.3d 99, 103 (Mo. Ct. App. 2005) ("the relationship between a corporation and a creditor is merely that of a debtor and creditor") cited in Stricker v. Union Planters Bank, N.A., 436 F.3d 875, 878-79 (8th Cir. 2006). In Schlifke v. Seafirst Corp., 866 F.2d 935, 945 (7th Cir. 1989), the Seventh Circuit stated "execution of a contract in support of a bank loan, in itself, falls far short of creating a fiduciary relationship." The relationship between a customer and a bank "is not a fiduciary one," *Bucci v. Wacovia Bank, N.A.*, 2009 WL 1740503, *3 (E.D. Pa.) citing Waye v. Commonwealth Bank, 846 F. Supp. 321, 326 (M.D. Pa. 1994)**,** because there is "a presumption that the relationship between lenders and borrowers is conducted at arm's length and the parties are each acting in their own interest." Bucci, 2009WL 1740503 at *3.

The indictment alleges that Ms. Delgado created and caused to be created BBCs and CCs that were submitted to PrivateBank and that Ms. Delgado "certified on the compliance certificates that FMSI and RAMCO complied with the terms of the FMSI and RAMCO Loan Agreements." The indictment does not point to a particular BBC or CC as a misrepresentation, but the criminal complaint does include a reference to the May 31, 2016 Certificate of Compliance and the June 30, 2016 Certificate of Compliance, both of which were submitted significantly after the dates of the purported executions as charged and accordingly any action would only be a breach of contract and not criminal or even civil fraud.

### c. Missing Element Requires Dismissal of Indictment

The indictment is completely silent regarding materiality and whether the purported scheme involved a materially false or fraudulent pretense, representation, or promise as an essential element of the charging statement. As such, the indictment must be dismissed.

As a result of the overall vagueness and ambiguity of the indictment, it is not apparent what, if any, misrepresentations were made, when this occurred, who made the misrepresentation and why it would have been material. The indictment does not fairly inform Ms. Delgado or Mr. Houck of the charges they must meet or even permit the Court to conclude that the indictment states an offense. "Where guilt depends so crucially upon such a specific identification of fact, our cases have uniformly held that an indictment must do more than simply repeat the language of the criminal statute." *Russell v. United States,* 369 U.S. 749, 764 (1962).

### 3. Alleged Executions of the Scheme Are Not Misrepresentations

The Supreme Court determined in *Williams v. United States*, 458 U.S. 279, 102 S. Ct. 3088, 73 L.Ed.2d 767 (1982) that an order to a bank contained in a check is not a factual representation and therefore cannot be a misrepresentation. This rationale applies with equal force to a wire transfer order. The bare act of instructing a bank to transfer funds is not a factual representation; thus, it cannot be a *mis*representation, a *false* representation, or *any kind* of representation.

The indictment states that Ms. Delgado and Mr. Houck "knowingly submitted and caused to be submitted to the PrivateBank a total of over $4 million in false and fraudulent requests for loan funds from the PrivateBank pursuant to the FMSI Loan Agreement." *Id.* ¶ 8. Instead of alleging specific instances of false and fraudulent requests for loan funds as the execution of the purported scheme and referencing the misrepresentation, the indictment alleges the execution of the scheme to defraud was by "causing the PrivateBank to transfer" funds by wire transfer without providing any specifics as to why these transfers were fraudulent requests and whether the alleged transfers were indeed draws or advances from the loan with PrivateBank or whether the funds originated from the Financial Management Services, Inc. corporate checking account.

The indictment does not specify any particular misrepresentation made to the PrivateBank or any federally insured financial institution by Ms. Delgado or Mr. Houck regarding the transfers, nor does the indictment specify any particular borrowing base certificates or any compliance certificates that were submitted to the PrivateBank with allegedly fictitious information that were contemporaneous with the transfers. Payment orders, without more, are not false or fraudulent representations or executions.

As noted in the FMSI of Delaware Loan History that established the amount of the Breach of Contract Judgment in the civil case, there were 58 loan disbursements between October 29, 2013 and August 31, 2016 with the dates and amounts of the loan disbursements and the corresponding outstanding principal loan amount included in the detail. Each loan disbursement was credited to the corporate deposit account to be used for general corporate purposes. *See* FMSI of Delaware Loan Agreement ¶ 5.1 and ¶ 2.1(a)(ii). The loan disbursements do not correspond with any of the counts in the indictment, nor does the indictment provide any tracing to attempt to tie a loan disbursement to any specific transfer of funds.

Additionally, in accordance with the Treasury Management Services Agreement ("TM Agreement") executed by Financial Management Services, Inc. as the authorized party for electronic banking and as detailed in Schedule 6, §1 Electronic Funds Transfer Service, electronic account transfers, wire transfers and ACH transfers "will be originated based on instructions, data or other information transmitted or otherwise communicated to the Bank by Client or on behalf of Client," and "each such Transfer shall be deemed a "Payment Order," as defined in Article 4 of the UCC." Schedule 6, §3 states that "The Client authorizes the Bank to debit its Account(s) to initiate Transfers based on the Payment Orders received by Bank and

Client agrees to pay to the Bank the amount of each Transfer no later than the date the Transfer is processed by the Bank." Id. ¶ 6. Financial Management Services, Inc. transmitted a secure file to the Bank each evening that contained those payment orders called FMSI Daily Fund. Accordingly, (i) FMSI of Delaware, Inc., did not fund any customers of Financial Management Services, Inc.; (ii) Privatebank/CIBC did not fund any customers of Financial Management Services, Inc. and (iii) Financial Management Services, Inc. was the originator of all transfers/payment orders to customers, vendors, investors and other payable recipients including wires, ACH or EFT Transactions.  The TM Agreement is attached as Exhibit 5 to the Declaration of Carol J. Delgado in Support of Defendant's Motion To Dismiss the Indictment.

### 4.    The Counts

Count One alleges Ms. Delgado and Mr. Houck caused the PrivateBank to transfer $37,430 by wire transfer to an account at Chase Bank on or about May 12, 2015.  The indictment does not indicate that this transaction was initiated as a result of a specific intentional false representation made to PrivateBank or any federally insured financial institution by Ms. Delgado or by Mr. Houck, nor does it match any loan disbursement on the FMSI of Delaware Loan History.  Financial Management Services, Inc. did initiate a Payment Order for $37,430 and in accordance with the TM Agreement, the Bank was paid for the ACH transfer no later than the date the transfer was processed. Thus, Count One does not constitute a violation of any statute and must be dismissed.

Count Two alleges Ms. Delgado and Mr. Houck caused the PrivateBank to transfer $108,350 by wire transfer to an account at Chase Bank on or about May 15, 2015.  The indictment does not indicate that this transaction was initiated as a result of a specific intentional false representation made to PrivateBank or any federally insured financial institution by Ms.

Delgado or by Mr. Houck, nor does it match any loan disbursement on the FMSI of Delaware

Loan History.  Financial Management Services, Inc. did initiate a Payment Order for $108,350

and in accordance with the TM Agreement, the Bank was paid for the ACH transfer no later than

the date the transfer was processed. Thus, Count Two does not constitute a violation of any

statute and must be dismissed.

Count Three alleges Ms. Delgado and Mr. Houck caused the PrivateBank to transfer

$479,000 by wire transfer to an account at BMO Harris on or about August 6, 2015.  The

indictment does not indicate that this transaction was initiated as a result of a specific intentional

false representation made to PrivateBank or any federally insured financial institution the by Ms.

Delgado or by Mr. Houck, nor does it match any loan disbursement on the FMSI of Delaware

Loan History.  Financial Management Services, Inc. did initiate a Payment Order for $479,000

and in accordance with the TM Agreement, the Bank was paid for the wire transfer no later than

the date the transfer was processed. Thus, Count Three does not constitute a violation of any

statute and must be dismissed.

Count Four alleges Ms. Delgado and Mr. Houck caused the PrivateBank to transfer

$32,000 by wire transfer to an account at Chase Bank on or about January 14, 2016.  The

indictment does not indicate that this transaction was initiated as a result of a specific intentional

false representation made to PrivateBank or any federally insured financial institution by Ms.

Delgado or by Mr. Houck, nor does it match any loan disbursement on the FMSI of Delaware

Loan History.  Financial Management Services, Inc. did initiate a Payment Order for $32,000

and in accordance with the TM Agreement, the Bank was paid for the ACH transfer no later than

the date the transfer was processed. Thus, Count Four does not constitute a violation of any

statute and must be dismissed.

Count Five alleges Ms. Delgado and Mr. Houck caused the PrivateBank to transfer $113,585.44 by wire transfer to an account at West Suburban Bank on or about June 30, 2016. The indictment does not indicate that this transaction was initiated as a result of a specific intentional false representation made to PrivateBank or any federally insured financial institution by Ms. Delgado or by Mr. Houck, nor does it match any loan disbursement on the FMSI of Delaware Loan History. Financial Management Services, Inc. did initiate a Payment Order for $113,585.44 and in accordance with the TM Agreement, the Bank was paid for the ACH transfer no later than the date the transfer was processed. Thus, Count Five does not constitute a violation of any statute and must be dismissed.

## VI.      CONCLUSION

As stated in the foregoing, the indictment fails to state an offense and does not adequately inform as to the charges to defend against.   It is not apparent what misrepresentations were made, who made them or when the misrepresentations occurred.  The indictment is silent regarding the materiality of any purported misrepresentations as well as the intent to defraud a financial institution and the execution of the scheme is alleged to be the transfer of funds without any allegation of a representation or misrepresentation at the time of the purported transfer of loan funds. The indictment does not quantify the purported scheme, execution, intent, or materiality with sufficient particularity to allege bank fraud under 18 U.S.C. § 1344(1) and accordingly must be dismissed.

Respectfully submitted,

*Carol J Delgado*

Carol J. Delgado, Pro Se

Carol J. Delgado
Pro Se
209 N. Ft. Lauderdale Beach Blvd. #2A
Fort Lauderdale, FL 33304
(815) 228-5254
cjdelgado3@gmail.com

CERTIFICATE OF SERVICE

Carol J. Delgado, Pro Se, hereby certifies that the foregoing was served on September 3, 2021 in accordance with Fed.R.Crim.P.49, Fed.R.Civ.P.5, LR 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers.

*Carol J Delgado*

Carol J. Delgado
209 N. Ft. Lauderdale Beach Blvd #2A
Fort Lauderdale, FL 33304
(815) 228-5254
cjdelgado3@gmail.com